NOT FOR PUBLICATION

RECEIVED
OCT 15 2018
AT 8:30_____ 3:10 PM
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JANE DOE,

    Plaintiff,

v.

BANK OF AMERICA, N.A.,

    Defendant.

Civ. No. 16-3075

OPINION

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court on an Amended Motion for Attorney Fees brought by Plaintiff Jane Doe ("Plaintiff"). (ECF No. 43.) Defendant Bank of America, N.A. ("BOA" or "Defendant") opposes. (ECF No. 46.) The Court has decided the Motion after considering the written submissions without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, Plaintiff's Motion is granted in part and denied in part with relief as modified herein.

## BACKGROUND

As the parties are familiar with the facts of this case, the Court reprises only those facts that are relevant for this Motion.[1] In summary, this case concerns BOA's alleged significant delay in returning funds to Plaintiff from her BOA bank account after she moved from the United States to South Sudan and attempted to close her BOA account.

---

[1] The Court adopts the fuller recitation of facts that appears in its January 3, 2018 Opinion regarding Defendant's Motion for Summary Judgment. (Op. at 1–6, ECF No. 37.)

1

Plaintiff first contacted her counsel, Stephen G. Harvey of Steve Harvey Law LLC, about representing her in this dispute in February 2016. (Harvey Decl. ¶¶ 4–5, ECF No. 43-3.) Mr. Harvey agreed to represent Plaintiff and, on her behalf, wrote to BOA's general counsel and demanded repayment of Plaintiff's funds, enclosing a draft copy of a proposed civil complaint. (*Id.* ¶¶ 6–7.) BOA responded that it would return Plaintiff's funds only if Plaintiff agreed to sign a waiver releasing BOA from liability. (*Id.* ¶ 8.) BOA eventually agreed to return Plaintiff's funds to her, but BOA would not agree to compensate Plaintiff for the time and effort it took her to recover these funds over the course of eighteen months. (*Id.* ¶ 9.)

On May 27, 2016, Plaintiff filed her complaint, pleading (I) wrongful dishonor of a check (Compl. ¶¶ 74–77, ECF No. 1), (II) breach of contract under New Jersey common law (*id.* ¶¶ 78–83), (III) common law fraud (*id.* ¶¶ 84–88), and (IV) violation of the New Jersey Consumer Fraud Act (the "NJCFA"), N.J.S.A § 56:8-2 (*id.* ¶¶ 89–92). Plaintiff sought compensatory damages of approximately $8,000; consequential damages for emotional distress; and treble damages, attorneys' fees and costs, and punitive damages as authorized under the NJCFA. (*Id.* at 16.)

At the close of discovery, Defendant filed a Motion for Summary Judgment and Motion to Strike Plaintiff's jury demand on October 12, 2017 (ECF Nos. 31, 32), which Plaintiff opposed (ECF No. 35). On January 3, 2018, the Court granted Defendant's Motion for Summary Judgment in part and denied it in part, entering judgment in Defendant's favor on Counts I and II, but allowing Plaintiff's claim pursuant to the NJCFA (Count IV) to proceed. (*See* Op. and Order, ECF Nos. 37, 38.) Plaintiff had voluntarily dismissed her common law fraud claim (Count III) during summary judgment briefing. (*See* Pl.'s Br. at 2 n.1, ECF No. 35; *see also* Order at 1 n.1.)

The parties attended a settlement conference with Magistrate Judge Douglas E. Arpert on May 10, 2018. (*See* ECF No. 39 (setting conference date); *see also* Docket Entry Dated 05/10/2018 (text minute entry for settlement conference).) The parties reached a confidential settlement on May 15, 2018. (Harvey Decl. ¶ 10.) The settlement resolved Plaintiff's outstanding claim but not her request for attorneys' fees and costs. (*See, e.g.*, ECF Nos. 40, 41 (scheduling orders regarding briefing schedule for anticipated fee application); *see also* Harvey Decl. ¶ 13.) To date, the parties have not asked the Court to enter judgment with regard to the negotiated settlement.

Plaintiff timely filed an Amended Motion for Attorney Fees and Expenses on July 13, 2018. (ECF No. 43.)[2] Plaintiff requests legal fees in the amount of $206,405 and expenses in the amount of $6,209.16. (Pl.'s Br. at 7, ECF No. 43-2; *see also* Dzara Decl., Ex. A, ECF No. 43-5 (hereinafter "Hours Invoice") (Steve Harvey Law LLC invoice for representation in this case).) Plaintiff's counsel is required by contract to pay one-third of any recovery of fees to the Philadelphia Bar Association as a referral fee. (Harvey Decl. ¶ 13.)

## LEGAL STANDARD

As a general matter, when attorneys' fees are statutorily permitted, "[a] plaintiff must be a 'prevailing party' to recover" such a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (regarding award of attorneys' fees under 42 U.S.C. § 1988). "A 'prevailing' plaintiff entitled to a fee award is one who has succeeded on 'any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing the suit.'" *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 601–02 (D.N.J. 1998) (alteration in original) (quoting *Hensley*, 461 U.S.

---

[2] Plaintiff's initial filing (ECF No. 42) included calculation errors, and Plaintiff asked the Court to disregard that filing. Per the docket entry dated July 16, 2018, the Court terminated the initial filing.

3

at 433). Once the reviewing court determines that an award of attorneys' fees and costs is appropriate, it must calculate a "lodestar" amount. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). This calculation is a two-step process.

First, the court must determine the number of hours reasonably expended on the litigation. In determining the reasonable number of hours, the court should exclude hours that were "excessive, redundant, or otherwise unnecessary." *Id.* The court can also exclude hours "spent litigating claims on which the party did not succeed and that were distinct in all respects from claims on which the party did succeed." *Id.* (citations and quotation marks omitted); *see also 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc.*, 547 A.2d 1134, 1144 (N.J. Super. Ct. App. Div. 1988) (holding that award of attorneys' fees under the NJCFA should not cover effort expended on independent claims). However, when a plaintiff's related, alternative theories of liability involve common facts, those theories are not "distinct" claims; the court should focus on the overall relief the plaintiff obtained in relation to the hours reasonably expended. *See Silva v. Autos of Amboy, Inc.*, 632 A.2d 291, 296 (N.J. Super. Ct. App. Div. 1993).

Second, the court must determine the reasonable hourly rate of compensation. A reasonable hourly rate accords with the prevailing rate in the relevant community, *see Rode*, 892 F.2d at 1183 (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), and is often based on average market rates of similarly situated lawyers based on comparable skill, experience, and reputation. *Id.*; *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (*as amended* Feb. 25, 2005) ("[A] reasonable hourly billing rate for such services [is] based on the given geographical area, the nature of the services provided, and the experience of the attorneys."); *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 447 (N.J. 2004). The court may consider the relationship between the billed rate and the task performed. *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.

4

1983) ("Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates.").

The court then multiplies the number of hours reasonably expended on the litigation by the reasonable hourly rate of compensation to determine the lodestar. *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433); *Blakey*, 2 F. Supp. 2d at 602. "The lodestar is presumed to be the reasonable fee." *Rode*, 892 F.2d at 1183 (citing *Blum*, 465 U.S. at 897). A party seeking an adjustment of the fee bears the burden of proving that an adjustment is necessary, and the court may, under its discretion, adjust the lodestar. *Id.*

As with any fee-shifting statute, "[t]he amount of reasonable attorneys' fees to be awarded pursuant to [the NJCFA] . . . is within the sound discretion of the trial court," and in crafting a reasonable fee award the court should consider factors such as the level of success achieved in the litigation and the amount of damages recovered as compared to the requested fee amount. *Branigan v. Level on the Level, Inc.*, 740 A.2d 643, 647–48 (N.J. Super. Ct. App. Div. 1999) (citing *Chattin v. Cape May Greene, Inc.*, 581 A.2d 91, 102–06 (N.J. Super. Ct. App. Div. 1990), *aff'd*, 591 A.2d 943 (1991) (per curiam)); *see also Furst*, 860 A.2d at 447. The NJCFA also permits awarding litigation expenses, but only adequately documented "expenses that are incurred in order for the attorney to be able to render his or her legal services." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (listing typical reimbursable expenses). Finally, the Court should bear in mind that the "purpose of awarding attorney fees for [NJCFA] violations is to provide an incentive for an attorney to take a case involving a minor loss." *Heyert v. Taddese*, 70 A.3d 680, 713 (N.J. Super. Ct. App. Div. 2013).

## DISCUSSION

### I. Plaintiff Is Properly Considered a Prevailing Party

The NJCFA provides for attorneys' fees, filing fees, and costs to a prevailing party. *Furst*, 860 A.2d at 446 (citing N.J.S.A. § 56:8-19). Even if unable to prove an ascertainable loss, "a consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice." *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 465 (N.J. 1994); *see also Branigan*, 740 A.2d at 647.

The New Jersey Appellate Division has determined that "adjudication of liability under a fee-shifting statute is not a prerequisite to fee entitlement under that statute so long as the relief obtained in a settlement of the litigation is substantially that sought in the complaint, is evidenced by an enforceable judgment, and was brought about by the litigation." *Schmoll v. J.S. Hovnanian & Sons, LLC*, 927 A.2d 146, 147 (N.J. Super. Ct. App. Div. 2007) (collecting cases). Therefore, settlement of an NJCFA claim does not preclude a court from awarding statutory attorneys' fees under the NJCFA. *See Schmoll*, 927 A.2d at 147–49 (finding that the plaintiffs were prevailing parties where the parties reached a mid-trial settlement after the trial court denied the defendant's motion for summary judgment regarding the plaintiffs' NJCFA claim, thus triggering the NJCFA's fee-shifting provision).

Here, Defendant contends—citing neither mandatory nor persuasive authority—that "[P]laintiff has failed to make a showing that she is entitled to fees at all" because "in granting summary judgment in part to [Defendant], the court did not make any findings of facts with respect to the NJCFA claim." (Def.'s Br. at 3.) Plaintiff concedes that the "procedural posture of this fee application is unusual" because "[i]t is not the result of judgment in Plaintiff's favor . . . but [rather] by agreement of the parties." (Pl.'s Br. at 15; *see also* Def.'s Br. at 3, ECF No.

6

46 (contesting Plaintiff's entitlement to attorneys' fees).) Plaintiff further admits that "only her NJCFA claim entitled her to recovery of legal fees and costs." (Pl.'s Br. at 15.) But the parties reached a confidential settlement agreement only after Plaintiff's NJCFA claim survived Defendant's Motion for Summary Judgment. Although this settlement agreement is not evidenced by an enforceable judgment, the agreement is binding on the parties, was brought about after substantial litigation, and, based on counsel's representations regarding satisfaction with the confidential negotiated settlement, appears to have largely provided Plaintiff the relief she sought in her Complaint. *See Hensley*, 461 U.S. at 433 (noting that "prevailing parties" need only "succeed on any significant issue in litigation which achieves *some* of the benefit the parties sought in bringing suit" (emphasis added)). Accordingly, Plaintiff is properly considered a prevailing party entitled to attorneys' fees under N.J.S.A. § 56:8-19.

## II.   Plaintiff Is Entitled to Fees and Costs

Plaintiff requests attorneys' fees in the amount of $206,405[3] and costs in the amount of $6,209.16. (Pl.'s Br. at 7.) Plaintiff relies on the Community Legal Services of Philadelphia ("CLS") fee schedule as a comparator to determine a reasonable hourly rate. (*Id.* at 8; *see* Dzara Decl., Ex. B, ECF No. 43-6 (CLS fee schedule).) Plaintiff avers that the following rates are appropriate and comparable to the CLS fee schedule: $625 per hour for Stephen G. Harvey, Esq.; $425 per hour for David V. Dzara, Esq.; $250 per hour for Rachel K. Gallegos, Esq.; $200 per

---

[3] In her initial fee application, "Plaintiff [was] not seeking fees for time spent preparing th[e] fee application." (Pl.'s Br. at 3 n. 3.) Since the initial application, however, Plaintiff apparently now requests to supplement the fee application with counsel's time spent applying for fees. (*See* Pl.'s Reply Br. at 14–15, ECF No. 48; 2d Harvey Decl. ¶¶ 72–74 ECF No. 49; 2d Harvey Decl., Ex. F, ECF No. 49-6.) Although Plaintiff's counsel requests an additional $45,043.29 (2d Harvey Decl., Ex. F), the Court will not entertain such a request as it was explicitly excluded from the initial fee application.

7

hour for Michael R. Romeo, Esq.; $125 per hour for Logan C. Miller[4]; $165 per hour for Maggie Riley; and $125 per hour for Theresa Bene. (Harvey Decl. ¶ 15.) Plaintiff details the individual qualifications of each member of the counsel team. (*See* Pl.'s Br. at 9–11; *see also* Harvey Decl. ¶¶ 14–23.) Plaintiff also encloses an itemized, twenty-five-page invoice of hours expended in pursuit of her claims (Hours Invoice), but Plaintiff has not organized for the Court the number of hours expended by each member of the counsel team or by each category of tasks. In aggregate, Plaintiff's request can be summarized as follows:

| Professional | Hours[5] | Rate | Fees |
|---|---|---|---|
| Stephen G. Harvey, Esq. | 149.50 | $625 | $93,437.50 |
| David V. Dzara, Esq. | 200.50 | $425 | $85,212.50 |
| Rachel K. Gallegos, Esq. | 2.75 | $250 | $687.50 |
| Michael R. Romeo, Esq. | 81.25 | $200 | $16,250 |
| Logan C. Miller | 31.75 | $125 | $3,968.75 |
| Maggie Riley | 35.25 | $165[6] | $5,816.25 |
| Theresa Bene | 8.50 | $125 | $1,062.50 |
| **TOTAL HOURS** | **509.50** | **TOTAL FEES** | **$206,435.00** |

Defendant argues that the fees must be reduced because of, among other reasons, "excessive hourly rates, double billing, block billing and over-staffing." (Def.'s Br. at 3.) In sum, Defendant argues that Plaintiff's requested fee award should be reduced because (1) the proposed fees from the Philadelphia geographic area are not reasonable because the New Jersey venue of this case requires a market rate based on New Jersey practitioners; (2) the analogy to the CLS fee schedule is misplaced and inapposite because CLS fees fund future public interest

---

[4] Mr. Miller worked on this case as a law student. Though he is now an admitted attorney, for clarity of role, the Court has omitted his esquire designation.

[5] The Court's summary of hours deducts the "No Charge" hours itemized by attorneys Mr. Harvey and Mr. Dzara. (*See* Hours Invoice.)

[6] There is one item for Maggie Riley which erroneously lists a pay rate of $125 per hour, as opposed to the requested $165 per hour. This discrepancy accounts for the $30 difference between the Court's sum total ($206,435) and Plaintiff's requested sum total ($206,405). (*See* Hours Invoice at 17 (line item dated 05/02/2017 for Maggie Riley).)

8

representation; (3) the invoice reflects redundant hours, grouped descriptions that prevent court review, and improperly top-heavy representation (*e.g.*, partner hours on routine tasks); and (4) Plaintiff survived summary judgment on only one out of four claims. (*Id.* at 5–12.) Defendant highlights specific portions of Plaintiff's invoice to support its arguments. (Dalena Decl. ¶¶ 8–45, ECF No. 46-1.)

To determine the appropriate fee here, the Court must calculate the lodestar—the fee presumed to be reasonable—by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate of compensation. *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433). Starting from the reasonable hourly rate of compensation, the Court agrees with Defendant that the CLS fee schedule, though approvingly cited by the Third Circuit with respect to litigation in Philadelphia, *see, e.g.*, *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001), is not a perfect comparator for this case. However, the Court has found other instances where such rates have been approved for litigation in New Jersey. *See, e.g.*, *Warren Distrib. Co. v. Inbev USA, LLC*, 2011 U.S. Dist. LEXIS 19721, at *44–47 (D.N.J. Feb. 28, 2011) (approving fee rates of up to $750 per hour for similar work as was performed here). Furthermore, although Defendant contends that the proposed fee rates "are too high" and "are inconsistent with practitioners handling breach of contract and consumer fraud actions in federal district court in New Jersey" (Dalena Decl. ¶ 2), Defendant offers no alternative fee rates that Defendant finds more appropriate. Therefore, the Court accepts Plaintiff's proffered fee rates as outlined in Plaintiff's fee application.

Moving on to the number of hours reasonably expended, the Court finds Plaintiff's estimated hours to be excessive. Defendant correctly identifies eight examples of inter-office conferences (*id.* ¶¶ 8–15); ten examples of double billing by Mr. Harvey and Mr. Dzara for court

9

appearances, depositions, and conference calls (*id.* ¶¶ 16–26); eight examples of sums spent on discrete tasks such as eight hours spent drafting a demand letter and over twenty-four hours spent on "digesting depositions" (*id.* ¶¶ 27–34); and three examples of "double/triple billing" where multiple attorneys "bill[ed] to perform the same task" such as attending depositions or court conferences (*id.* ¶¶ 36–38).[7] The Court finds these examples of excessive billing to be accurate and persuasive. Most importantly, however, the Court finds it particularly notable that Mr. Harvey and Mr. Dzara, a partner and senior counsel respectively, billed a combined 350 hours on this case compared to just 84 hours billed by the two associates. (*See* Pl.'s Br. at 9–11.) As Defendant contends, the hours expended are indeed "top heavy," especially for a such a simple fraud case. (Def.'s Br. at 11.) Plaintiff's counsel could have—and should have—delegated more tasks to younger associates or paralegals with lesser billing rates. For instance, Mr. Harvey billed $625 per hour for numerous hours "draft[ing] a timeline of key events based on review of documents," over sixteen hours drafting and revising the Complaint, seven hours in one day simply conferring with colleagues, over five hours drafting a response to Defendant's statement of undisputed facts, and about ten hours traveling to Trenton for which Mr. Dzara billed as well. (*See* Hours Invoice at 1–25.) Similarly, Mr. Dzara billed $425 per hour for almost five hours revising the Complaint that Mr. Harvey drafted, numerous hours reviewing documents and preparing responses during discovery, over twenty hours preparing for depositions that Mr. Harvey actually conducted, and over thirty hours (in addition to contributions from others) drafting Plaintiff's brief opposing Defendant's Motion for Summary Judgment. (*See id.*) The facts of this case are not complicated, and no novel issues of law presented any formidable

---

[7] Defendant also identifies five examples of "block billing" (Dalena Decl. ¶¶ 39–41, 43, 45), but the Court does not find this methodology in and of itself improper here and therefore need not address it.

10

barriers. Consequently, the Court finds it appropriate to reduce the number of hours expended by Mr. Harvey and Mr. Dzara by fifty percent. The hours expended by Mr. Harvey (149.50) and Mr. Dzara (200.50) will be reduced to 74.75 and 100.25 hours, respectively.

Calculation of the lodestar, however, does not complete the Court's analysis. The Court may, in its discretion, "adjust the fee amount upward or downward." *Posa v. City of E. Orange*, 2005 U.S. Dist. LEXIS 20060, at *18 (D.N.J. Sep. 7, 2005). For instance, "counsel fees should only be awarded to the extent that the litigant was successful." *Washington v. Phila. Cnty. Court of Common Pleas*, 89 F.3d 1031, 1042 (3d Cir. 1996). Although no single formula exists in determining how much a fee award should be reduced for lack of success, courts take a holistic approach contemplating whether the "fee would be unreasonable in consideration of the degree of success obtained." *Ford v. Cnty. of Hudson*, 2017 U.S. Dist. LEXIS 33549, at *15–16 (D.N.J. Mar. 8, 2017). This is so "even where 'the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.'" *Id.* (citing *Hensley*, 461 U.S. at 436). Courts have wide discretion and commonly "consider[] the extent to which claims or defendants were dismissed from the action." *Id.* (citing *Mancini v. Northampton Cty.*, 836 F.3d 308, 321 (3d Cir. 2016); *Roccisano v. Twp. of Franklin*, 2015 U.S. Dist. LEXIS 75622, at *19 (D.N.J. June 11, 2015)); *see also Hensley*, 461 U.S. at 440 ("[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.").

Here, Defendant contends that "the lodestar should be reduced based on the limited success of [P]laintiff's claims." (Def.'s Br. at 5.) Plaintiff procured a seemingly successful amount of damages per the confidential settlement agreement in regard to her NJCFA claim, but "economic success, while relevant, is not dispositive." *Pretlow v. Cumberland Cnty. Bd. of Soc. Servs.*, 2005 U.S. Dist. LEXIS 35547, at *26 (D.N.J. Dec. 20, 2005). Indeed, three out of

11

Plaintiff's four claims had already been dismissed: the Court granted Defendant's Motion for Summary Judgment in regard to Plaintiff's Wrongful Dishonor of a Check and Breach of Contract claims (Counts I and II) (Order at 1), and Plaintiff voluntarily dismissed her Common Law Fraud claim (Count III) (*id.* at 1 n.1). Because Plaintiff achieved only partial success on her claims, the Court reduces the lodestar by fifty percent. *See Hensley*, 461 U.S. at 436 ("[H]ad respondents prevailed on only one of their six general claims... a fee award based on the claimed hours clearly would have been excessive."); *Dinizo v. Twp. of Scotch Plains*, 2010 U.S. Dist. LEXIS 72212, at *1 (D.N.J. July 19, 2010) (reducing fees by 55% because, *inter alia*, "Plaintiff only prevailed on one of four claims at trial"), *aff'd*, 421 F. App'x 173 (3d Cir. 2011); *Butler v. Frett*, 2006 U.S. Dist. LEXIS 44468, at *36 (D.N.J. June 29, 2006) (reducing lodestar by 50% "to reflect [plaintiff's] limited degree of success"); *Pretlow*, 2005 U.S. Dist. LEXIS 35547, at *26–27 (reducing lodestar by approximately 20% "in light of their partial success in litigation" as plaintiff prevailed on one out of three claims).

The Court's calculation for fees is amended as follows:

| Professional | Hours | Rate | Fees |
| --- | --- | --- | --- |
| Stephen G. Harvey, Esq. | 74.75 | $625 | $46,718.75 |
| David V. Dzara, Esq. | 100.25 | $425 | $42,606.25 |
| Rachel K. Gallegos, Esq. | 2.75 | $250 | $687.50 |
| Michael R. Romeo, Esq. | 81.25 | $200 | $16,250 |
| Logan C. Miller | 31.75 | $125 | $3,968.75 |
| Maggie Riley | 35.25 | $165 | $5,816.25 |
| Theresa Bene | 8.50 | $125 | $1,062.50 |
| **TOTAL HOURS** | 334.50 | **TOTAL FEES** | **$117,110.00** |
| **REDUCTION FOR LIMITED SUCCESS** | 50% | **FINAL FEES** | **$58,555.00** |

Separately, the Court finds Plaintiff's requested costs of $6,209.16 to be reasonable. The Court therefore orders that $64,764.16 ($58,555.00 in fees and $6,209.16 in costs) be paid by Defendant to Plaintiff.

## CONCLUSION

For the reasons stated herein, Plaintiff's Amended Motion for Attorney Fees is granted in part and denied in part with relief as modified herein. An appropriate order will follow.

Date: 10/15/2018

*Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.